IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| **HOWARD MATHIS,** ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | No. _____ |
| ) | **JURY DEMAND** |
| **JDC LOGISTICS, LLC** ) | |
| **Defendants.** ) | |

## COMPLAINT

Plaintiff Howard Mathis ("Plaintiff" or "Mr. Mathis"), by and through his undersigned counsel, as and for his Complaint in this action against Defendant JDC Logistics, LLC ("Defendant"), hereby alleges as follows:

## NATURE OF THE CLAIMS

1. This is an action for monetary damages to redress Defendant's unlawful employment practices against Plaintiff, including its discriminatory treatment and harassment of Plaintiff due to his race and its unlawful retaliation against him after he complained about unlawful discrimination in the workplace in violation of the Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981").

## JURISDICTION AND VENUE

2. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1981 this action involves federal questions regarding the deprivation of Plaintiff's rights under Section 1981.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

## PARTIES

4.  Plaintiff Howard Mathis is a resident of Cobb County, Georgia. At all times relevant to this Complaint, Plaintiff was a resident of the State of Tennessee and met the definition of an "employee" under Section 1981.

5.  Upon information and belief, Defendant is engaged in the trucking business in the State of Tennessee. At all relevant times, Defendant has met the definition of an "employer" under Section 1981.

## FACTUAL ALLEGATIONS

6.  Plaintiff is an African American male and former employee of Defendant.

7.  Plaintiff was employed by Defendant from June 8, 2022 to July 5, 2022, as a truck driver.

8.  While employed, Plaintiff received two anonymous notes that contained racist language directed at him.

9.  On June 21, 2022, Plaintiff arrived at work at Defendants' warehouse and discovered the first note taped to his steering wheel, attached hereto as <u>Exhibit A</u>.

10. The note contained racist, obscene, and derogatory language, including calling him "nigga" twice.

11. The note also referred to Plaintiff's girlfriend, who is white, in derogatory terms.

12. The note was unsigned and gave no indication who wrote it.

13. Plaintiff did not know who wrote the note.

14. Taping the note to Plaintiff's steering wheel was unwelcomed conduct.

15. Plaintiff believed the note created a hostile and abusive working environment for him.

16. "Nigga" is a variation of the word "nigger."

17. "Nigga" and "nigger" are racist terms used to intimidate, harass, and denigrate African Americans.

18. Historically, the term "nigger" has been used in the United States by perpetrators of violence against African Americans, including lynchings.

19. Today, in the United States, there is no worse racist term than "nigger" to use in reference to an African American, so much so that the word is commonly referred to as the "n-word" to avoid having to utter it in civil conversation or print.

20. Historically, interracial romantic relationships between an African American man and a white woman have led to violence against the African-American man, including lynchings.

21. As an African American male, the note made Plaintiff feel harassed, threatened, and unsafe based upon his race because it called him a "nigga."

22. As an African American male, the note made Plaintiff feel harassed, threatened, and unsafe based upon his race because it referred to his white girlfriend in derogatory terms.

23. As an African American male, it was reasonable for Plaintiff to feel harassed, threatened, and unsafe by the note based upon his race because it called him a "nigga."

24. As an African American male, it was reasonable for Plaintiff to believe that the note created a hostile and abusive work environment based upon his race because it called him a "nigga."

25. As an African American male, it was reasonable for Plaintiff to feel harassed, threatened, and unsafe by the note based upon his race because it referred to his white girlfriend in derogatory terms.

26. As an African American male, it was reasonable for Plaintiff to believe that the note created a hostile and abusive work environment based upon his race because it referred to his white girlfriend in derogatory terms.

27. Plaintiff showed and reported the note to his immediate supervisor so that the matter would be investigated. The supervisor told him that the matter would be investigated.

28. Defendant owed a legal obligation to Plaintiff to investigate the note and take prompt and effective remedial action to end the harassment.

29. On June 27, 2022, Plaintiff arrived at work at Defendants' warehouse and discovered a second note taped to his steering wheel, attached hereto as <u>Exhibit B</u>.

30. The second note contained racist, obscene, and derogatory language, including calling him "nigga" twice.

31. The second note contained hostile and abusive language, including calling him "nigga" twice.

32. The second note also referred to Plaintiff's girlfriend, who is white, in derogatory terms.

33. The second note was unsigned and gave no indication who wrote it.

34. Plaintiff did not know who wrote the second note.

35. Taping the second note to Plaintiff's steering wheel was unwelcomed conduct.

36. Plaintiff believed the second note, independently and in conjunction with the first note, created a hostile and abusive working environment for him.

37. As an African American male, the second note, independently and in conjunction with the first note, made Plaintiff feel harassed, threatened, and unsafe based upon his race because it called him a "nigga."

4

Case 3:22-cv-00444-JEM   Document 3   Filed 12/20/22   Page 4 of 10   PageID #: 16

38. As an African American male, the second note, independently and in conjunction with the first note, made Plaintiff feel harassed, threatened, and unsafe based upon his race because it referred to his white girlfriend in derogatory terms.

39. As an African American male, it was reasonable for Plaintiff to feel harassed, threatened, and unsafe by the second note, independently and in conjunction with the first note, based upon his race because it called him a "nigga."

40. As an African American male, it was reasonable for Plaintiff to believe that the second note, independently and in conjunction with the first note, created a hostile and abusive work environment based upon his race because it called him a "nigga."

41. As an African American male, it was reasonable for Plaintiff to feel harassed, threatened, and unsafe by the second note, independently and in conjunction with the first note, based upon his race because it referred to his white girlfriend in derogatory terms.

42. As an African American male, it was reasonable for Plaintiff to believe that the second note, independently and in conjunction with the first note, created a hostile and abusive work environment based upon his race because it referred to his white girlfriend in derogatory terms.

43. Plaintiff showed and reported the second note to his immediate supervisor so that the matter would be investigated. The supervisor told him that the matter would be investigated.

44. On July 5, 2022, Plaintiff called Defendant's regional director, Joe Morovich, on the telephone and asked him about the status of the Defendant's investigation of the notes.

45. Mr. Morovich assured that the notes would be investigated and that the person responsible would be "terminated on the spot."

46. During the same conversation, Mr. Morovich stated that Defendant was firing Plaintiff solely because he had a consensual romantic relationship with his girlfriend, who was the same white co-worker referred to in the note.

47. Mr. Morovich stated that he was sorry that he had to terminate Plaintiff because, as he stated to Plaintiff "by all accounts you've been a great worker."

48. At the time of firing Plaintiff, Mr. Morovich did not know if the Defendant had a policy against terminating employees who engage in consensual romantic relationships with a co-worker.

49. Plaintiff asked Mr. Morovich if such a relationship violated a company policy. Mr. Morovich replied, "I'll double check my company policy there, like I said, to see if it's on company paper there."

50. Plaintiff stated to Mr. Morovich during the call that he felt that he was being retaliated against for reporting the notes and racial harassment.

51. As of the day of Plaintiff's termination, Defendant did not have a written policy that employees could not date or have a romantic relationship.

52. Other co-workers employed by Defendant and of the same race have openly engaged in romantic relationships without being terminated or otherwise disciplined.

53. Defendant never investigated the notes nor any racial harassment or discrimination of Plaintiff prior to his termination.

54. Defendant never interviewed Plaintiff regarding the notes Plaintiff reported.

55. Defendant has never disciplined any employee for writing the notes or for harassing or discriminating against Plaintiff.

56. The two notes were so severe and pervasive that a reasonable person in Plaintiff's position would consider his work environment to be abusive and hostile.

57. But for Plaintiff's reporting the two notes to his supervisor, Plaintiff would not have been terminated on July 5, 2022.

58. But for Plaintiff's making a claim that he felt harassed by the two notes, Plaintiff would not have been terminated on July 5, 2022.

59. Plaintiff's reporting the two notes to Defendant directly caused his termination by Defendant.

60. The author of the notes was an employee of the Defendant.

61. Defendant's termination of Plaintiff was an adverse tangible employment action.

## FIRST CAUSE OF ACTION

(Harassment in Violation of Section 1981)

62. Plaintiff hereby repeats and realleges the allegations in each of the preceding paragraphs as if fully set forth herein.

63. Defendant is liable for the hostile work environment created by the harassing author of the notes in violation of Section 1981. If the harasser was a supervisor, Defendant is vicariously liable for the harassment. If the harasser was a non-supervisor employee, Defendant knew about the harassment and failed to take prompt remedial action to address the harassment.

64. As a direct and proximate result of Defendants' acts and omissions in violation of Section 1981, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits for which he is entitled to an award of monetary damages and other relief.

65. As a direct and proximate result of Defendants' acts and omissions in violation of Section 1981, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

66. Defendants' acts and omissions constitute a willful and wanton violation of Section 1981, was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

## SECOND CAUSE OF ACTION

(Retaliation in Violation of Section 1981)

67. Plaintiff hereby repeats and realleges the allegations in each of the preceding paragraphs as if fully set forth herein.

68. Defendant retaliated against Plaintiff in violation of Section 1981 by terminating his employment because he reported the notes to his supervisor and the racial discriminatory and harassing language contained therein.

69. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of Section 1981, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits for which he is entitled to an award of monetary damages and other relief.

70. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of Section 1981, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for

which he is entitled to an award of monetary damages and other relief.

71. Defendants' unlawful retaliatory conduct constitutes a willful and wanton violation of Section 1981, was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment in his favor and against Defendant, containing the following relief:

A. A declaratory judgment that the actions, conduct and practices of Defendant complained of herein violate the laws of the United States;

B. An injunction and order permanently restraining Defendant from engaging in such unlawful conduct;

C. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages, including, but not limited to, the loss of past and future income, wages, compensation, and other benefits of employment;

D. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including, but not limited to, compensation for his severe mental anguish and emotional distress, humiliation, depression, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering and any other physical or mental injuries;

E. An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff in an amount to be determined at trial, plus prejudgment interest;

F. An award of punitive damages;

G. An award of costs that Plaintiff has incurred in this action, as well as Plaintiff's reasonable attorneys' fees to the fullest extent permitted by law; and

H. Such other and further relief as the Court may deem just and proper.

Respectfully submitted,

T. MCKEE LAW PLLC

_/s/ T.C. McKee_____

Todd C. McKee
BPRN 18123
Maya Sethi
BPRN 30660
4235 Hillsboro Pike, Ste. 300
Nashville, TN 37215
615.916.3224
tmckee@tmckeelaw.com